(No. 76-CC-1936– )

McLean County School District No. 5, Claimant, *v.* Illinois Soldiers' and Sailors' Children's School, Respondent.

*Opinion filed June 7, 1982.*

*Order on denial of motion for reconsideration filed August 26, 1982.*

Fleming, Messman & O'Connor, for Claimant.

Tyrone C. Fahner, Attorney General (William E. Webber, Assistant Attorney General, of counsel), for Respondent.

Holderman, J.

Claimant filed a claim for monetary damages as a result of property loss resulting from the destruction of windows and other property at the Eugene Field Elementary School by persons who were wards of the Illinois Soldiers' and Sailors' Children's School, Normal, Illinois.

Claimant waived the right to a hearing and submitted briefs along with evidentiary depositions of Charles McAnally and Edward Schweinberg. There was no oral testimony submitted and the commissioner did not have the benefit of questioning any of the parties involved.

The Illinois Soldiers' and Sailors' School is located in Normal, McLean County, Illinois, and is a facility operated by the Department of Children and Family Services. The facility consists of 52 acres with several buildings on its grounds. At the time of the occurrence, there were approximately 65 children in residence.

There are three cottages that house students and all are connected to a central core. From this core, entrance can be gained to any of the three cottages. One person is assigned to this core from 10:30 p.m. until 6:30 a.m. One of the duties of this person is to visually observe the three cottages and to conduct intermittent bed checks of the students. It was evidently impossible for the attendant to see the windows of any of the three cottages from where he was stationed.

Each cottage had an exterior door that was locked at night to prevent ingress. Each door was equipped with a panic bar for emergency egress. The cottages' windows are 2½ to 3 feet from the ground and can be opened from the interior to exit the cottages. Each cottage has a "cottage parent" who was on duty from 6:30 a.m. until 10:30 p.m. After the "parents" leave at 10:30 p.m., the supervisor in the core area comes on duty. A duty officer comes on duty at 5:00 p.m. until 1:00 a.m. to patrol the grounds on a non-set schedule. After 1:00 a.m., no duty officer is present.

The facility is an open institution in that doors are

not locked to keep the children in nor is the facility encircled with a fence.

The investigatory report filed by the Department of Children and Family Services stated that Gordon Bolden and James Huggins admitted using croquet mallets to break the Claimant's windows and were apprehended by the State police while driving a stolen automobile. This incident occurred during the late evening on February 25, 1976, or the early morning of February 26, 1976. This damage occurred while the children were at liberty without the permission or knowledge of the Respondent.

Gordon Bolden was a delinquent minor who had been involved in many activities such as burglary, theft, shoplifting, criminal damage to property, aggravated battery and truancy, and had also been involved in breaking lights and windows on the Respondent's grounds. He had escaped from Respondent's quarters on at least eight previous occasions.

James Huggins has not been classified as a delinquent minor but had been involved with Gordon Bolden in the window breaking incident on Respondent's grounds and had run away from Respondent's facility on several occasions.

The record indicates that it was characteristic of many of the children to run away from the facility and it experienced an average of 1.2 runaways in each 24-hour period. After the incident in question, Respondent closed the cottage windows so the children could not open them to exit the building, which is how the two children responsible for this particular incident had gotten away from Respondent. It appears that by closing the windows, the number of runaways has been reduced.

This Court set down the rules that must be followed before recovery can be made: (1) that an inmate escaped from an institution over which the State had control; (2) that the inmate caused the damage claimed while he was at liberty after his escape; (3) that the proper State authority establishes upon investigation that the damages were caused by the escapee; and (4) a determination of the nature and extent of the damages. 26 Ill. Ct. Cl. 15.

The record shows that the damage to Claimant's facility was in the amount of $608.59.

Claimant having supplied the requisite proof, as set forth in *Castleman v. State* (1976), 31 Ill. Ct. Cl. 382, and Respondent having failed to offer any evidence in rebuttal, award is hereby entered in favor of Claimant in the amount of six hundred eight dollars and fifty-nine cents ($608.59).

## ORDER ON DENIAL OF MOTION
## FOR RECONSIDERATION

This matter comes before the Court upon motion of Respondent for reconsideration of an award heretofore entered by this Court.

Respondent's position is that the Court erred in entering an award for damages resulting from the acts of two runaways from the Illinois Soldiers' and Sailors' Children's School in Normal, Illinois.

The Court, in viewing the record and in particular the commissioner's report, finds the following to be the apparent facts in this case. The two individuals involved were Gordon Bolden and James Huggins. The record calls attention to the fact that there are 65 inmates in the facility from which the individuals escaped and that they are all there because they have been found to have been

in need of some kind of supervision or were classified to be delinquent minors.

The record shows that Gordon Bolden had been involved in many activities, including burglary, theft, shoplifting, criminal damage to property, aggravated battery and truancy and had been involved in breaking lights and windows on the Respondent's grounds. It also appears he had run away from the institution on at least eight prior occasions. James Huggins, the other individual involved, had not been classified as a delinquent but had been involved with Bolden in the window-breaking incident on Respondent's grounds and had run away on several occasions from Respondent.

It is also interesting to note that on the occasion of the incident on which this claim is based, they were in a stolen car when they were captured.

The record discloses that after 10:30 p.m., there was one person whose duty was to more or less supervise the three cottages in which the inmates were confined. He was situated where he could not see the windows of the cottages. The windows were left unlocked and were approximately 2½ to 3 feet above the ground and could be opened from the interior. After 1:00 a.m., there was no duty officer at the cottages. The record shows the doors were not locked to keep the inmates in. A significant fact is that after this incident, the windows were closed and that prior to this incident, the institution was averaging 1.2 runaways in each 24-hour period. It also appears that by the simple act of closing the windows, the number of runaways has been reduced.

Respondent calls the Court's attention to two cases. In the case of *Johnson v. State* (1981), 34 Ill. Ct. Cl. 234, the damages were caused during the initial escape while

the escaped inmate was actively being pursued by agents of Respondent. Further, there is nothing in the opinion in that case that would indicate the individual escaping had a record anywhere near equal or parallel to that of one of the inmates involved in the present matter. The second case, *Curiel v. State* (1979), 33 Ill. Ct. Cl. 56, involved a claim where an inmate while on off-grounds activity stole a motor vehicle. He was off-grounds as he was supposed to be going to the control center for medication. The record in this case is also silent as to whether or not his previous activities would lead one to believe he would attempt to escape or create further problems or damages. The Court is of the opinion that both of these cases contain facts that do not in any manner, shape or form conform to the present case.

In *Ingram v. State* (1979), 33 Ill. Ct. Cl. 134, the Court laid down the rule that the State is liable for actions of escaped inmates if it was negligent in allowing the escape. This case also laid down the rule that where it is shown that an inmate of a State correctional facility has escaped, a presumption of negligence arises and it becomes incumbent upon the State to rebut the presumption.

It is the Court's opinion that negligence has been established in this matter and while the institution from which the individuals escaped was not in one sense of the word a "correctional institution," it was a State institution where the State had charge of the inmates. It also had the records of the individuals causing the damages and the Court believes the State was negligent in its duty in not preventing the escape.

To follow Respondent's argument to its logical conclusion, the citizens of the State of Illinois would be

open prey to individual activities, such as those of Gordon Bolden and James Huggins. Their record of escapes and criminal activities, as stated previously, certainly should have put the State on notice of the kind of supervision that was required and should have strongly indicated to Respondent that more restrictive measures should be enacted and complied with. The relatively simple matter of closing the windows, which evidently alleviated some of the escapes, is indicative of the fact that Respondent was indeed negligent in handling individuals whose propensities were as well known as those of Bolden and Huggins. It is the Court's opinion that to condone activities such as occurred in this case, with the knowledge the State had of the proclivities of its inmates, would be an open invitation to inmates to indulge in all sort of illegal activities to the detriment of every resident of the State of Illinois.

Motion for reconsideration denied.